COVINGTON TRUCK COMPANY, Inc., Appellee, v. INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA (AFL) Local 667, J. L. Biggers, Lloyd Turner, C. H. Augustine, Major Gray, Otis Trosper, Lawrence Winfrey, as Officers, Directors and Members of said Union, Appellants.—298 S. W. (2d) 561.

Western Section. April 25, 1956.

Rehearing Denied by Court of Appeals, June 21, 1956.

Petition for Certiorari denied by Supreme Court, July 20, 1956.

Anthony J. Sabella, Memphis, for appellant.

Newell M. Fowler, Memphis, for appellee.

CARNEY, J. The appellants, defendants below, are officers, directors, and managers of Local No. 667 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America (AFL) and will be hereinafter referred to as the Union.

They have appealed from a decree of the Chancellor dismissing the original bill as to the defendant Union but making permanent against seven defendant motor carriers a mandatory injunction to interline or exchange freight with the complainant Covington Trucking Company, Inc.

The complainant Covington Trucking Company is a Tennessee Corporation doing business as a motor carrier on the public highways of Tennessee for the transportation of freight between Covington and Memphis, Tennessee, wholly within the State of Tennessee with terminals both at Covington and at Memphis.

The seven named defendant motor carriers do business in interstate commerce and are all qualified to do business within the State of Tennessee with terminals in Memphis where they have been accustomed to interlining and handling freight to and from the Covington Trucking Company.

In March, 1955, the defendant Union was acting as bargaining agent or seeking to act as bargaining agent for some of the employees of the Covington Trucking Company. A dispute over wages, terms, etc. occurred, the defendant Union called a strike, and seven of the employees of the Covington Trucking Company went on strike.

These seven employees were replaced and the Covington Trucking Company continued to do business. Thereupon the Union set up picket lines at the terminals in Covington and Memphis. Employees of the defendant motor carriers refused to cross the picket lines or to handle freight from the Covington Trucking lines on the grounds that such freight constituted ''hot cargo.''

Covington Trucking Company brought suit for injunction against the seven motor carriers and against the defendant Union seeking a mandatory injunction requiring such corporations to interline freight with the Covington Trucking Company.

The Union expressly pleaded in its answer that the Chancellor had no jurisdiction of the cause and that it was a matter in which the National Labor Relations Board had exclusive jurisdiction.

The Chancellor held that since it did not clearly appear that the National Labor Relations Board would refuse to assume jurisdiction over the labor dispute between the Covington Trucking Company and the Union, that the state court should refuse to accept jurisdiction of the complainant's suit against the defendant Union. Accordingly, he entered an order dismissing the complainant's bill insofar as it affected the defendant Union and its members.

He did, however, hold that the matter of interlining freight between common carriers in Tennessee was a matter over which the state court had jurisdiction and that the Interstate Commerce Commission and the Federal Courts had not pre-empted this field. He further held that he, as Chancellor, did have jurisdiction over the complainant and the defendant motor carriers.

The Chancellor held that under Sections 5418, 5420, and 5441 of the 1932 Code and by the common law common carriers were required to accept and transport freight without discrimination. He further held that even though it appeared that the defendant motor carriers had refused to accept the freight because of their "hot cargo contracts" with their employees, that such contracts were

not binding upon the public and that a common carrier could not relieve himself of his duty to the public by private contracts.

The Chancellor cited and relied upon the Tennessee cases of Memphis News Publ. Co. v. Southern Ry. Co., 110 Tenn. 684, 75 S. W. 914, 63 L. R. A. 150 and Hogan v. Interurban R. Co., 131 Tenn. 244, 174 S. W. 1118, L. R. A. 1915E, 788.

The injunction issued by the Chancellor is as follows:

"That a permanent Injunction issue against the Defendant motor carriers and each of them, their officers, employees, agents or representatives, mandatorily ordering and directing them, and each of them, to interchange and interline with Complainant without discrimination, to receive, transport, and deliver freight tendered by or deliverable to Complainant, without discrimination, in accordance with the usual rates and regulations applicable to other shipments or other carriers, and without regard to any "hot cargo" or other contractual limitations which they or any of them, may have entered into with their employees, or with any other person, firms, or corporations."

The defendant motor carriers did not appeal from this decree. None of the appellants are employees of the defendant motor carriers.

Thus we see that the only appellants in this case were the defendant members of the Union against whom the suit was dismissed and against whom the Court below decreed no action of any kind. The decree of the Chancellor did not tax the appellants herein with any costs

nor did it order them to do anything nor to desist from doing anything. The Chancellor simply held that he had no jurisdiction over these appellants as officers of the Union and dismissed complainant's bill against them just as they had prayed in their answer.

These appellants do not assign as error the action of the Chancellor in dismissing the action against them.

On the contrary their six assignments of error are leveled at the action of the Chancellor in assuming jurisdiction over the defendant motor carriers, and in holding that the hot cargo provisions of the contracts which the defendant motor carriers had with their respective employees was not sufficient justification for refusal to interchange freight with complainant without discrimination.

They insist that the Chancellor was in error in granting a permanent mandatory injunction against the defendant carriers, their officers and employees requiring them to interchange and interline such freight.

The complainant below, appellee herein, Covington Trucking Company, has filed a motion to dismiss the appeal as follows:

### "Motion to Dismiss

"Comes the Appellee in the above-styled cause and moves that the appeal in said cause be dismissed for the following reasons.

"(1). That the Appellants herein, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (AFL) Local 667, et al the Defendant below is not properly before this Court in that the Court below dismissed the suit as to said union.

"(2). That the Decree of the Court below did not enjoin appellants from doing or from refraining from doing any acts.

"(3). That the Defendant motor carriers in the Court below, to wit: Hoover Motor Express Company, Inc., Inter City Trucking Company, Hayes Freight Line, Inc., East Texas Motor Freight Line, Southeastern Motor Truck Lines, Inc., Roadway Express, Inc., D. C. Hall Transports, Inc., their officers, agents, employees, servants etc. by mandatory injunction were enjoined from refusing to handle or interline freight and merchandise of appellee; and that said Defendants who were so enjoined, have failed to appeal and are not before this Court.

"Wherefore appellee prays that the appeal of appellants herein be dismissed.

"/s/ Newell N. Fowler

"Newell N. Fowler,
Attorney for Appellee".

The appellants insist that the motion is not well taken. They insist that since their Union is the bargaining agent for the employees of the seven defendant motor carriers as well as other motor carriers in the area that substantial rights of the Union are affected by the injunction issued by the Chancellor and that therefore, they have an appealable interest in the cause.

It seems to be the general rule that a litigant may not appeal from a judgment, order or decree in his favor but such party may appeal from a judgment in his favor if the Court entering the judgment has committed some error prejudicial to him. 2 Am. Jur., Appeal and Error, Section 153, Right of Prevailing Party to Appeal, p. 945.

See also 3 C. J. p. 635 and 4 C. J. S., Appeal and Error, sec. 183, p. 359. Also Massengill v. Massengill, 36 Tenn. App. 385, 255 S. W. (2d) 1018.

However, in the case at bar we think the appeal should be dismissed for two reasons:

First, these appellants, individually and as a union, pleaded in their answer to the original bill that the state court had no jurisdiction over them and expressly asked the Chancellor to dismiss the bill against them. The Chancellor granted their prayer.

They have made no assignment of error that the Chancellor was wrong in sustaining their plea to the jurisdiction. None of the parties below have questioned the correctness of the Chancellor's ruling on this question. Therefore, the action of the Chancellor in dismissing the bill as to the defendant Union on the grounds of lack of jurisdiction has become final and is binding on this court.

If the Chancellor does not have jurisdiction over the appellants then of course this court could not have jurisdiction over them and the defendant Union is not legally in court.

In the second place, it appears to us that the defendant Union and the appellants as officers thereof are not so aggrieved or adversely affected by the decree of the Chancellor as to entitle them to an appeal in this case. We think so long as the complainant, Covington Trucking Company, and the defendant motor carriers and their employees do not object or appeal from the Chancellor's injunction that the fact that the defendant Union is or was bargaining agent for some or all of the em-

ployees of the defendant trucking companies does not give the Union such an interest as would entitle it to appeal. None of the employees have appealed.

For these two reasons we find it unnecessary and improper to pass upon the assignments of error relating to the correctness of the Chancellor's decree for a mandatory injunction.

The motion to dismiss will be sustained and the appellants taxed with the costs of this appeal.

Avery, P. J. (W. S.), and Bejach, J., concur.